783 So.2d 786 (2001)
Willie Ruth WALLIN (DREWERY), Appellant,
v.
John DREWERY, Appellee.
No. 1999-CA-01478-COA.
Court of Appeals of Mississippi.
April 24, 2001.
*787 Charlie Gaines Baker, Batesville, for Appellant.
Ronald W. Lewis, Oxford, for Appellee.
Before KING, P.J., PAYNE, and MYERS, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. This case stems from a divorce proceeding. John Drewery filed a petition to cite his ex-wife, Willie Ruth Wallin, for contempt for failing to abide by the judgment of divorce, specifically as it related to Willie Ruth's obligation concerning the marital home. The special master found Willie Ruth to be in wilful and contumacious contempt for violating the divorce order. Thereafter, Willie Ruth moved for a new trial, citing a conflict of interest which should have forced the special master to recuse himself from hearing her case. The motion was denied, and she now appeals to this Court.

FACTS
¶ 2. Willie Ruth Wallin and John Drewery were married on September 5, 1989, and were granted a divorce in the Lafayette County Chancery Court on March 26, 1998. Pursuant to the judgment of divorce, Willie Ruth was awarded the marital home, with rights reserved to John should Willie Ruth become delinquent in paying the mortgage. When Willie Ruth failed to make the mortgage payments, John filed a petition citing Willie Ruth for contempt. Since John was the sole promissor on the house note, his credit was substantially affected by the delinquency. The court found Willie Ruth in wilful and contumacious contempt and ordered her to deliver a quitclaim deed to John for the home. Additionally, Willie Ruth was ordered to pay John $4,085 plus accrued interest as compensation for John's personal property that was missing or damaged due to Willie Ruth's acts. She also was ordered to pay John's attorney's fees. As described herein, we find no error in the special master's decision and affirm.

ANALYSIS OF THE ISSUES PRESENTED

STANDARD OF REVIEW
¶ 3. With this appeal, appellant Willie Ruth Wallin raises the following issues for our review:
I. SPECIAL MASTER MALSKI COMMITTED MANIFEST ERROR BY FINDING THE APPELLANT TO BE IN CONTEMPT OF COURT AND ORDERING THE APPELLANT TO EXECUTE A QUITCLAIM DEED UNTO THE APPELLEE AND VACATING HER RESIDENCE.

*788 II. CHANCELLOR ALDERSON COMMITTED MANIFEST ERROR IN DENYING THE APPELLANT'S MOTION FOR NEW TRIAL.
¶ 4. Our standard of review with regard to the decision of a chancellor is this:
This Court will not overturn the decision of a chancellor in domestic cases when those findings are supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, or applied an erroneous legal standard.... As a result of this deferential standard of review, the chancellor's findings will only be overturned if they are manifestly wrong.
Kennedy v. Kennedy, 650 So.2d 1362, 1366 (Miss.1995) (citations omitted).

DISCUSSION OF THE ISSUES

I. SPECIAL MASTER MALSKI COMMITTED MANIFEST ERROR BY FINDING THE APPELLANT TO BE IN CONTEMPT OF COURT AND ORDERING THE APPELLANT TO EXECUTE A QUITCLAIM DEED UNTO THE APPELLEE AND VACATING HER RESIDENCE.
¶ 5. With this first issue, the provision of the divorce judgment in question is paragraph 4(A) which reads:
That the Wife shall have sole title, use and possession of the marital home and she shall be solely responsible for the satisfaction of that certain indebtedness owed thereon to FmHA and she shall forever save and hold harmless the Husband from same. That the Wife shall maintain insurance, taxes and other related expenses thereto. That the Husband shall execute a quitclaim deed unto the Wife conveying all his interest in and to the real property. Should the Wife become delinquent in excess of sixty (60) days, the Husband may pay said indebtedness and shall be automatically entitled to a judicial lien on subject property upon filing of this Order in the Judgement Roll in the Office of the Circuit Clerk, Lafayette County, Mississippi. Additionally, should the Wife become delinquent in her obligations to FmHA for a period exceeding one hundred twenty (120) days, the Husband shall be entitled to pay the arrearage current and the Wife shall execute a quitclaim deed unto the Husband and vacate said premises. That the Husband shall tender forthwith any and all documents related to payment obligations of said home unto the Wife.
¶ 6. John argues that Willie Ruth's reading of this provision is erroneous as she claims that she is required to miss payments for 120 days in a row before she must surrender the house to John. Special Master Michael Malski found the dispute to be one of interpretation of this particular section of the judgment. Specifically in question is the issue of whether the 120 days had to be a continuous failure for 120 days to make payments of any kind or whether it meant an overall habit of delinquency on Willie Ruth's part during that time period. In his judgment, Special Master Malski noted that Willie Ruth was guilty of "delay, obstruction, deceit and unexplained failure to abide by this Court's prior orders and the Property Settlement Agreement." In so finding, Malski noted John's testimony that he had received several foreclosure notices, which were only halted by John's voluntary payment of the overdue balance on the mortgage obligations. As additional evidence, John presented a spreadsheet showing a record of payments made and the amounts paid by either him or Willie Ruth which reinforced his testimony.
¶ 7. Looking specifically to the testimonies contained in the transcript, John testified *789 that he received a foreclosure notice in June because payments, for which Willie Ruth was responsible, were not current from March through June. Again in July, John received a foreclosure notice which caused him to voluntarily pay off the overdue balance. John received another foreclosure notice in August, which caused him again to pay off the balance to bring the account up to date. John explained that he felt he had to make the payments to protect his credit rating from further being affected by the delinquencies. John testified that Willie Ruth apparently made partial payments during some of these months, but her failure to make the payments in full rendered the account delinquent each month. In fact, the only time Willie Ruth made a full payment was in September when John finally filed a motion for contempt against her. After September, the account remained current because John made the payments. John further testified that he had to pay the insurance on the home, though this was one of Willie Ruth's responsibilities as set forth in the property settlement agreement.
¶ 8. Willie Ruth testified that she understood her obligations pursuant to the property settlement agreement. Her only rebuttal to John's claims that she failed to make her required payments was that the mortgage company would not give her any information on the account because John's name alone was on the account. She claimed that she did not ask John for any of this paperwork regarding the mortgage account because he was supposed to give it to her. She also said she was not allowed to insure the home herself, since the home was titled in John's name. On cross-examination, Willie Ruth stated that she was making payments on the home during a previous period when a temporary order was in effect, awaiting the outcome of the court's final finding. She admitted that she did know the amount of the payments then and personally made them to the Farm Rural Housing office. In response to questions concerning the delinquency, she passed the blame off on John for allegedly not providing her with any information concerning the account, though on cross-examination she did explain that she knew the payment amount and knew where to make the payments.
¶ 9. Willie Ruth appealed to Chancellor Alderson via a motion for new trial, and the chancellor denied such motion. We are not permitted on appeal to re-weigh the evidence presented to either Special Master Malski or Chancellor Alderson. Also, absent a finding that the chancellor abused his discretion, was manifestly wrong, or applied an erroneous legal standard, we are required to affirm. Kennedy, 650 So.2d at 1366. Taking all the evidence, including the testimonies, we defer to the chancellor's finding, since he was able to weigh the evidence and to judge the credibility of these witnesses. We find he did not abuse his discretion as it seems apparent that Willie Ruth faltered on her end of the bargain. There was no error here and we affirm.

II. CHANCELLOR ALDERSON COMMITTED MANIFEST ERROR IN DENYING THE APPELLANT'S MOTION FOR NEW TRIAL.
¶ 10. Willie Ruth moved for a new trial based on what she feared was a conflict of interest, and a hearing was held on the motion before Chancellor Glenn Alderson on August 2, 1999. The alleged conflict of interest regards Special Master Michael Malski, who heard the contempt proceeding. As an attorney, Malski represented William Westbrook, a good friend of John's, in a 1994 divorce action. Willie Ruth alleged that Westbrook was a codefendant with John in a civil lawsuit *790 pending at that time in the Lafayette County Circuit Court where Willie Ruth was the plaintiff. She further alleged that John's motion for citation for contempt, on which Malski ruled, was filed after the action in the circuit court. Willie Ruth claimed she was entitled to a new trial based on the unclean hands doctrine since Westbrook, John's co-defendant in another suit, was a client of Malski's, who acted as special master in her suit. However, as the record, briefs, and further discussion herein show, we find that Willie Ruth's argument is based on conjecture and mere speculation.
¶ 11. At the hearing on the motion for new trial, Westbrook testified that he knew of John's divorce action, but he did not know the subject of the contempt action or that Malski would be the judge. Also, no testimony brought out at the hearing related to any specific facts which would indicate that Malski had any knowledge of John and Willie Ruth's ongoing court proceedings at the time he was representing Westbrook. The only connection shown was that Malski happened to represent Westbrook in a divorce, and Westbrook happened to be a good friend of John Drewery. Westbrook did not testify in John and Willie Ruth's case, nor did Westbrook know of Malski's sitting on the bench to hear the case of his friend, John. Additionally, Westbrook testified that in this separate action in which he and John were co-defendants, Malski was not the attorney nor did he have any knowledge of the action.
The standard by which this Court determines if a judge should have disqualified him or herself, is an objective standard under Canon 3. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." The presumption is "that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a `reasonable doubt' (about the validity of the presumption)[.]" When a judge is not disqualified under the constitutional or statutory provisions, "the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion." ...
The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application.
Collins v. Joshi, 611 So.2d 898, 901-02 (Miss.1992) (citations omitted).
¶ 12. Aside from Willie Ruth's belief that Malski would know about the lawsuit in which John and Westbrook were codefendants, even though Malski was not counsel on that case, Willie Ruth presents no factual basis for her claim that Malski's impartiality in the instant case reasonably could be questioned. There was no direct connection, nor was there any evidence that Malski acted improperly, nor that he had reason to do so. The chancellor properly overruled the motion for new trial, and we affirm on this issue.

CONCLUSION
¶ 13. Finding no merit to either issue raised on appeal, we affirm the decision of the Lafayette County Chancery Court.
¶ 14. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
*791 McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS and CHANDLER, JJ., concur.
IRVING, J., concurs in result only.